## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ERIN NICOLE KASSOUF,

                             Plaintiff,                    Case No.:  6:24-cv-725

v.

BLUE ORIGIN FLORIDA, LLC,

                             Defendant.

_____/

## VERIFIED COMPLAINT FOR DECLARATORY, EQUITABLE RELIEF AND DAMAGES, WITH JURY DEMAND

Plaintiff ERIN NICOLE KASSOUF ("Ms. Kassouf" or "Plaintiff"), by and through her attorneys, hereby complains of Defendant BLUE ORIGIN FLORIDA, LLC ("Defendant" and/or "Blue Origin"), upon information and belief as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and Fla. Stat. § 760.10, *et seq.*, and seeks damages to redress the injuries she has suffered as a result of being discriminated and retaliated against based upon her sex and engagements in protected activity.

1

## JURISDICTION & VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e and 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which Defendant resides and where a substantial part of the underlying events or omissions giving rise to Plaintiff's claims occurred.

## PROCEDURAL REQUIREMENTS

4.      On March 24, 2023, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

5.      On February 1, 2024, the EEOC issued a Determination and Notice of Suit Rights to Plaintiff.

6.      Plaintiff has filed this action within 90 days of receipt of the Determination and Notice of Suit Rights.

## THE PARTIES

7.      At all relevant times, Plaintiff was and is a resident of Orlando, Florida. During the relevant time period herein, Defendant employed Plaintiff as a Senior Control Engineer at its Merritt Island, Florida facility.

8.      At all relevant times, Defendant was and is a limited liability corporation organized pursuant to the laws of the State of Florida with its principal place of business at 8082 Space Commerce Way, Merritt Island, Florida.

2

## MATERIAL FACTS

9.      Plaintiff identifies as a transgender female.

10.     Defendant is an aerospace manufacturer, defense contractor, launch service provider and space technologies company.                    r6:24-cv-720

11.     In July 2019, Defendant hired Plaintiff as a Senior Control Engineer at its Space Coast Facility located in Merritt Island, Florida. Defendant was aware of Plaintiff's gender identity.

12.     Notably, after Defendant hired Plaintiff, Plaintiff sold her home located in Michigan and relocated her family to Florida to begin her employment with Defendant.

13.     Upon commencing her employment, multiple employees informed Plaintiff about biases against individuals "like Plaintiff" within Blue Origin.

14.     Throughout her employment, Plaintiff performed her job duties in an exemplary manner and never received any verbal or written warnings nor disciplinary citations in connection with her performance. In fact, in November 2022, Defendant awarded Plaintiff with the "Lift Off" award recognizing her for her outstanding performance along with a raise in compensation. This award is a symbolic recognition only given to a small percentage of Defendant's employees for exceptional contribution.

3

15.     During her tenure, Senior Engineering Manager Kenneth Anthony,[1] who was Plaintiff's direct supervisor, subjected Plaintiff to discriminatory treatment based upon her sex. Specifically, in her 2021 performance evaluation, Anthony included negative and unjustified ratings concerning Plaintiff's performance. Anthony also treated Plaintiff in a discriminatory manner by, among other things, unjustifiably blaming Plaintiff for project delays, taking credit for Plaintiff's work and/or giving credit to others over Plaintiff, spreading false information in order to tarnish Plaintiff's reputation, and regularly dismissing and/or discouraging Plaintiff's inquiries regarding career advancement opportunities due to his discriminatory animus against her based upon her sex and gender identity. Notably, Vice President Mary Planket, who reports directly to Jeff Bezos, was aware of the discriminatory actions against Plaintiff and failed to address and/or ameliorate the situation.

16.     In addition to Anthony's treatment, Plaintiff was also subjected to discriminatory treatment by her colleagues due to her sex and gender identity. For example, Plaintiff was informed by a colleague that two cisgender employees

---

[1] During Plaintiff's interview, Anthony, who was a Senior Engineer at the time, attempted to dissuade the rest of the team from hiring Plaintiff. Nevertheless, due to Plaintiff's exemplary background as an Engineer with 15 years of experience, as well as her strong interview skills, Defendant disregarded Anthony's discriminatory attempts.

discriminatorily questioned which restroom Plaintiff utilized due to her gender identity.

17.     In or around 2020, Anthony began reporting to Manager Wes Naillon, who is a cisgender Caucasian male. Notably, Naillon openly displayed degrading views of any person who was not Caucasian and viewed women merely as a necessary part of the diversity image, as well as tools for his personal entertainment. Plaintiff was informed by several female colleagues that Naillon inappropriately attempted to take them out for lunch.

18.     On multiple occasions, Plaintiff spoke with Anthony regarding career advancement. In response, Anthony sent Plaintiff PDF charts, which Plaintiff completed and submitted to show that she was qualified for a promotion. In response, Anthony discriminatorily stated to Plaintiff that "someone like [her]" would never be promoted to a Principal Engineer. Thereafter, Anthony promoted an individual who was not only outside of Plaintiff's protected classes but had significantly less education and experience than Plaintiff, which further highlighted Anthony's discriminatory animus against Plaintiff based upon her sex and transgender identity.

19.     In 2022, Plaintiff raised concerns to Human Resources ("HR") about Anthony's discriminatory treatment with respect to her 2021 performance

evaluation. In response, HR intervened by assigning Human Resources Business Partner ("HRBP") April Smith to facilitate meetings between Anthony and Plaintiff.

20.     During subsequent meetings with Smith, Plaintiff reported Anthony's persistent discriminatory bias and unprofessionalism.

21.     Over the next three months, as a result of Smith's observations and Anthony's own admissions, Defendant revised Plaintiff's 2021 performance review, acknowledging that Plaintiff deserved high performance ratings and that she was overqualified for her position.

22.     On March 30, 2022, Defendant abruptly terminated the employment of Jillian Jenkins, who identifies as a transgender individual. Defendant's termination of Ms. Jenkins' employment occurred shortly after an incident between her and Naillon, during which he discriminatorily referred to Ms. Jenkins as "he" despite knowing that she identified as a woman. Notably, Plaintiff and Ms. Jenkins were the only two transgender individuals employed by Defendant.

23.     Following the discriminatory termination of Jillian Jenkins' employment, Defendant replaced Ms. Jenkins with a cisgender heterosexual Caucasian male Engineer, who was significantly less qualified than Ms. Jenkins.

24.     In May 2022, Defendant afforded Plaintiff a raise in compensation as a result of her exemplary performance. Notably, Smith suggested that Plaintiff apply

6

for a leadership role within the company given her demonstrated capabilities and acknowledged the unlikely possibility of a promotion under Anthony's supervision.

25.   In mid-2022, Defendant issued Plaintiff's Mid-Year Check-In, which indicated that she was performing "On Track."                    Type text here

26.   On December 1, 2022, during a Skype conference call with management and employees, Plaintiff expressed safety concerns with the team's workspace including, among other things, being forced to work in trailers using picnic tables that were not ergonomically designed for computer work and requiring the team to work long hours with unsanitary bathroom facilities, bug infestations, and insufficient lighting, which violated Defendant's purported work ethics.

27.   After the meeting, Plaintiff's colleague Suzanne Duffy, who is a cisgender female, approached Plaintiff and very loudly shouted at and humiliated Plaintiff in the presence of her colleagues. Specifically, Duffy discriminatorily stated that Plaintiff was an "embarrassment as a human being." Plaintiff felt Duffy's disdain as she openly screamed at and publicly insulted Plaintiff. Duffy's comment about Plaintiff being "an embarrassment" was directed towards Plaintiff's appearance as she looked and sounded different from her cisgender female colleagues. It was clear to Plaintiff and witnesses that Duffy's statements towards Plaintiff were directly related to her non-typical appearance and transgender identity. Notably, Duffy criticized Plaintiff's use of the word "we" when referring to the team,

7

which Plaintiff reasonably perceived as a personal attack and a clear attempt to ostracize Plaintiff from the rest of the team due to her transgender identity.[2]

28.     Following Duffy's discriminatory actions, Plaintiff engaged in protected activity by reporting the situation to Anthony. Significantly, Anthony did not directly respond to Plaintiff.

29.     On December 2, 2022, HR contacted Plaintiff, during which Plaintiff disclosed the details surrounding the incident that occurred with Duffy on the previous day.

30.     Upon information and belief, Defendant took no disciplinary action against Duffy in connection with her discriminatory actions towards Plaintiff.

31.     Following her engagement in protected activity, Anthony retaliated against Plaintiff by intentionally avoiding all interaction with her, excluding her from relevant work-related group meetings, ignoring her requests for instruction and/or direction, and essentially ostracizing her from the Engineering team.

32.     In early March 2023, Anthony further retaliated against Plaintiff by compiling a list of purported past concerns and false accusations, most of which preceded the date of Plaintiff's HR complaint, and issued said list to Plaintiff as if said concerns were new and/or unresolved issues.

---

[2] Notably, Plaintiff had previously submitted multiple complaints regarding Duffy's inappropriate conduct in the workplace; however, Defendant never disciplined Duffy for her misconduct.

33.     On March 3, 2023, Plaintiff engaged in further protected activity by submitting a written complaint to Defendant regarding the discriminatory treatment to which she was subjected based upon her sex, as well as the retaliatory treatment to which she was subjected by Anthony following her HR complaint.

34.     Subsequently, Plaintiff discussed her discrimination complaint with Vice President Mary Plunkett, who directed Plaintiff to speak with Shannon Gatta, who was the head of Defendant's internal LGBTQ+ support group named BLUE_RIDE. Notably, throughout 2022, Plaintiff had multiple conversations with Gatta regarding the discrimination and mistreatment to which Plaintiff was subjected by her manager and colleagues.

35.     On March 10, 2023, merely one week after Plaintiff submitted her discrimination complaint, Defendant further retaliated against her by abruptly terminating Plaintiff's employment based upon pretextual performance-related accusations. Significantly, Defendant failed to adhere to its extensive progressive disciplinary rules, policy, and procedures, when escalating to immediate termination despite that Plaintiff had never received any formal disciplinary citations prior to Anthony's pretextual accusations one week prior.

36.     Notably, Defendant's termination of Plaintiff's employment further highlighted its discriminatory animus against her based upon her sex. For example,

Defendant did not discipline similarly situated cisgender employees for engaging in the same or worse conduct for which Plaintiff was purportedly terminated.

37.     Following the termination of Plaintiff's employment, Defendant explicitly directed managers not to provide Plaintiff with employment references. HR Business Partner Kim Miltimore, who was directly involved in the termination of Plaintiff's employment, was responsible for this discriminatory and retaliatory directive. Plaintiff also received text messages from other managers advising her not to expect to receive employment references due to Miltimore's discriminatory and retaliatory directives. Defendant's deliberate action was intended to tarnish Plaintiff's reputation and make it exceedingly difficult for her to secure employment within her field.

38.     Additionally, Defendant refused to return Plaintiff's personal items that were left at the location and refused to cover medical bills for injuries Plaintiff sustained during a work-related accident months earlier.  Defendant's further retaliatory actions subjected Plaintiff to additional financial and emotional harm.

39.     Based upon the foregoing, Defendant discriminated against Plaintiff based upon her sex and retaliated against her following her engagements in protected activity when she complained about the disparate treatment to which she was subjected. Defendant treated Plaintiff differently as compared to similarly situated cisgender employees, who did not complain about discrimination, with respect to

their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Plaintiff's employment. Defendant's discriminatory and retaliatory actions also interfered with Plaintiff's ability to secure employment in the field of aerospace engineering, which is a specialized community.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e)

40.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

41.     Defendant's discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

42.     Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Title VII applies to an employee's gender identity.

43.     Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff identifies as a Transgender female.

44.     Plaintiff possessed proper qualifications for Defendant to continue her employment. Specifically, in November 2022, Plaintiff received the "Lift Off" award recognizing her outstanding performance along with a raise in compensation. Defendant's Human Resources personnel also encouraged Plaintiff to apply for promotional opportunities noting that she was overqualified for her position.

45.     Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her sex by subjecting her to disparate treatment in the terms and conditions of her employment. Specifically, Defendant subjected Plaintiff to disparate treatment by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and abruptly terminating her employment.

46.     Defendant and/or its agents subjected Plaintiff to adverse employment action by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints

of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress.

47.     As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

48.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF FLA. STAT. § 760.10)**

49.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

50.    Defendant's discrimination concerned activities protected by Fla. Stat. § 760.10.

51.    Fla. Stat. § 760.10 states, in relevant part: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's…sex…."

52.    Plaintiff is a member of a protected class pursuant to Fla. Stat. § 760.10, namely Plaintiff identifies as a Transgender female.

53.    Plaintiff possessed proper qualifications for Defendant to continue her employment. Specifically, in November 2022, Plaintiff received the "Lift Off" award recognizing her outstanding performance along with a raise in compensation. Defendant's Human Resources personnel also encouraged Plaintiff to apply for promotional opportunities noting that she was overqualified for her position.

54.    As outlined herein, Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her sex by subjecting her to disparate treatment in the terms and conditions of her employment. Specifically, Defendant subjected Plaintiff to disparate treatment by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities;

14

issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and abruptly terminating her employment.

55.     Defendant and/or its agents subjected Plaintiff to adverse employment action by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress.

56.     As a direct and proximate result of Defendant's unlawful conduct in violation of Fla. Stat. § 760.10, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

57.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Fla. Stat. § 760.10, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 2000e)

58.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59.    During Plaintiff's employment, Defendant subjected her to harassment and discrimination based upon her sex, as well as a hostile work environment.

60.    Specifically, Defendant regularly discriminated against and harassed Plaintiff by, among other things, labeling her as "an embarrassment as a human being" which was directed at her Transgender identity as she looked and sounded different from her cisgender female colleagues; denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints

16

of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress.

61.    Defendant subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule, and insult, which altered the terms and conditions of Plaintiff's employment and created an abusive work environment. Therefore, Defendant subjected Plaintiff to a hostile work environment on the basis of her race and gender in violation of Title VII.

62.    As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

63.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT**
**(HOSTILE WORK ENVIRONMENT IN VIOLATION OF FLA. STAT. §**
**760.10)**

64.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65.   Under Fla. Stat. § 760.10, employers are prohibited from discriminating, harassing, or bullying employees based upon their sex, and employers may be held liable for fostering a hostile work environment.

66.   During Plaintiff's employment, Defendant subjected her to harassment and discrimination based upon her sex, as well as a hostile work environment.

67.   Specifically, labeling her as "an embarrassment as a human being" which was directed at her Transgender identity as she looked and sounded different from her cisgender female colleagues; denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the

Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress.

68.    Defendant subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule, and insult, which altered the terms and conditions of Plaintiff's employment and created an abusive work environment. Therefore, Defendant subjected Plaintiff to a hostile work environment on the basis of her sex in violation of Fla. Stat. § 760.10.

69.    As a direct and proximate result of Defendant's unlawful conduct in violation of Fla. Stat. § 760.10, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

70.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Fla. Stat. § 760.10, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANT**
**(RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e)**

71.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72.    Title VII prohibits discrimination and retaliation.

73.    Title VII of the Civil Rights Act of 1964, Section 2000e-3(a) states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

74.    Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

75.    Plaintiff engaged in protected activity in 2022, by submitting complaints to HR, as well as executives, regarding the ongoing disparate treatment

20

and hostile work environment to which she was subjected by her colleagues and male manager. On March 3, 2023, Plaintiff engaged in further protected activity by submitting a written complaint to HR regarding the discriminatory and retaliatory treatment to which she was subjected following her previous engagements in protected activity.

76.     Defendant was aware of Plaintiff's engagements in protected activity as HR and executives addressed said complaints directly with Plaintiff.

77.     As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress. Notably, Defendant abruptly terminated Plaintiff's employment one week after she submitted a discrimination complaint to HR. Following the termination of Plaintiff's employment, Defendant continued to retaliate against Plaintiff by instructing

managers not to provide Plaintiff with employment references with the intent to tarnish Plaintiff's reputation and make it exceedingly difficult for her to secure employment within her field. Defendant also retaliatorily refused to cover medical bills for injuries Plaintiff sustained during a work-related accident months earlier.

78.     Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

79.     As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

80.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF FLA. STAT. § 760.10)

81.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82.     Fla. Stat. § 760.10 prohibits discrimination and retaliation.

83.     Fla. Stat. § 760.10(7) states: "It is an unlawful employment practice for an employer…to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

84.     Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Fla. Stat. § 760.10(7). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

85.     Plaintiff engaged in protected activity in 2022, by submitting complaints to HR, as well as executives, regarding the ongoing disparate treatment and hostile work environment to which she was subjected by her colleagues and male manager. On March 3, 2023, Plaintiff engaged in further protected activity by submitting a written complaint to HR regarding the discriminatory and retaliatory treatment to which she was subjected following her previous engagements in protected activity.

86.     Defendant was aware of Plaintiff's engagements in protected activity as HR and executives addressed said complaints directly with Plaintiff.

87.     As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: denying Plaintiff promotional and career advancement opportunities in favor of similarly situated cisgender and male employees despite her qualifications for said opportunities; issuing her pretextual negative performance evaluations; refusing to investigate her legitimate complaints of discrimination; excluding her from relevant work-related group meetings; denying her requests for instruction and/or direction; ostracizing her from the Engineering team; and ultimately terminating her employment based upon pretextual performance-related accusations, causing Plaintiff significant mental anguish and emotional distress. Notably, Defendant abruptly terminated Plaintiff's employment one week after she submitted a discrimination complaint to HR. Following the termination of Plaintiff's employment, Defendant continued to retaliate against Plaintiff by instructing managers not to provide Plaintiff with employment references with the intent to tarnish Plaintiff's reputation and make it exceedingly difficult for her to secure employment within her field. Defendant also retaliatorily refused to cover medical bills for injuries Plaintiff sustained during a work-related accident months earlier.

88.     Plaintiff's engagements in protected activity caused Defendant to take the above adverse actions against her.

89.     Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

90.     As a direct and proximate result of Defendant's unlawful conduct in violation of Fla. Stat. § 760.10(7), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

91.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Fla. Stat. § 760.10(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.     Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, Section 2000e-3, *et seq*. and Fla. Stat. § 760.10, *et seq.,* by discriminating against Plaintiff based on her sex and

transgender identity, subjecting Plaintiff to unlawful harassment and a hostile work environment, and retaliating against her following her multiple engagements in protected activity;

B.     Awarding Plaintiff compensatory damages for lost wages, mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

C.     Awarding Plaintiff punitive damages;

D.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

Dated:      April 18, 2024

**FERNEE KELLY LAW**

By: _____
    Charlotte Fernee Kelly, Esq.
    *Attorneys for Plaintiff*
    1600 E 8th Ave, Suite A200
    Tampa, FL 33605
    Tel.: (813) 544-8434

**WHITE & HILFERTY, P.C.**

By: _____

_____
Samantha E. Hudler, Esq.
*Attorneys for Plaintiff*
757 Third Avenue, 20th Floor
New York, NY 10017
Tel: (917) 565-8763

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ERIN NICOLE KASSOUF,

                  Plaintiff,              Case No.:  6:24-cv-725

v.

BLUE ORIGIN FLORIDA, LLC,

                  Defendant.

_____/

    **ERIN NICOLE KASSOUF**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

    1.    I am the Plaintiff herein.

    2.    I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed:    Orlando , Florida

        April  18 , 2024

*ERIN KASSOUF*

_____

ERIN NICOLE KASSOUF